MARIANE HANSEN, APPELLANT, V. CHARLES LAWRENCE, APPELLEE.

30 N. W. 2d 63

Filed December 5, 1947.   No. 32305.

*J. J. Harrington,* for appellant.

*Julius D. Cronin,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LANDIS, District Judge.

PAINE, J.

This is an action for damages for personal injuries suffered by plaintiff in the overturning of defendant's cattle truck at about 1 a. m., on March 23, 1945. The jury returned a verdict for defendant, and plaintiff appealed. The case was tried in the district court on the same pleadings used in the county court.

The plaintiff assigns as error that the evidence and the law do not sustain the verdict and judgment, and assigns as error on the part of the court the giving to the jury of instructions Nos. 5, 6, 7, 10, 14, 15, and 16 on its own motion. Plaintiff finally assigns as error the refusal of the court to give the jury the plaintiff's requested instructions Nos. 1 to 7 inclusive.

The facts in regard to this accident, as they appear in the evidence, are about as follows: Mariane Hansen, the plaintiff, lives on a farm about four miles southeast of O'Neill, Holt County. She was about 68 years old at the time of the accident, and was a widow. On March 22, 1945, she went to Ewing, Nebraska, in the morning with her daughter Luella in Bill Sparks' automobile. Bill had been keeping company with her daughter, and Bill and the plaintiff were both planning to buy cattle at a sale held that day in Ewing. At the sale pavilion plaintiff bought five head of cattle, giving her check for $277.46. Immediately after the sale she employed the defendant, who was 40 years old at the time of the trial and had been a regular trucker since 1934, to haul these cattle from Ewing to her home in his Ford truck.

The defendant also planned to haul in the same load that night two head of cattle bought by Bill Sparks and three head owned by George Coleman.

The defendant first hauled a load of cattle to Creigh-

ton, northeast of Ewing, after the sale, and did not return from this trip until around 11 o'clock that night, and then loaded up the cattle belonging to the three different parties.

The plaintiff testified that she wanted to ride home with her daughter in Bill Sparks' car, as she did not like to ride in a truck. Late at night the defendant came to the tavern where the plaintiff and many others were present, and she testified that the defendant told her if she did not ride back with him and show him where to put them he would not take her cattle, but would put them back in the sales pavilion.

The evidence of the defendant is that the plaintiff gave him the sales ticket for the five cattle she had purchased about sundown, told him to get the cattle, and asked if she could ride home with him. Defendant positively denied that he told her that she would have to go with him to show him where to unload the cattle or he would not take them.

On the trip to her farm, defendant dozed off to sleep; the truck ran across the road and tipped over on the left side of the road, with wheels in the air; and plaintiff suffered some injuries.

The plaintiff in her cross-examination was asked: "Q You were sitting there looking at the road? A Maybe I was sleeping too, I don't remember; that was a long time ago. Q If you were asleep you would remember that, wouldn't you? A He was supposed to drive the truck."

As it is very important how plaintiff came to be in the truck at the time of the accident, we will outline what some of the other witnesses said.

John Hawk, a farmer and rancher, who lived in that vicinity for about 35 years, heard the plaintiff and defendant talking, and in reply to a question answered as follows: "He said he had the cattle loaded and was ready to go; if some of them didn't go with him to show him where to put them he was going to unload them."

Lynn S. Flakus had known defendant for about a year and was present in a tavern between 10 and 12 on the night of the accident, and said there were a number of people there, and that the defendant "said that he wanted one of the Hansens to ride with him to show him where to unload the cattle; if they didn't he was going to unload them back in the stockyard."

The plaintiff's daughter, Luella Hansen, testified that she lived on the farm with her mother; that she had been going with William Sparks for some time and that morning Sparks had taken her and her mother to Ewing to the sale in his car; that her mother went down to buy some cattle. She testified that defendant made the statement that night that "he was going to take mama's cattle to the sale barn and unload if she didn't ride with him."

Although there were a number of people in the tavern, others of whom may have heard this conversation, the defendant called no witness to support his denial of the plaintiff's evidence as to why she was riding in his truck.

It appears from the instructions that the trial judge kept in mind the guest statute, section 39-740, R. S. 1943, and from these instructions appears to have instructed the jury on the theory that the evidence indicated that the facts clearly brought this case within the rule of the guest statute. On such theory he instructed the jury in instruction No. 5 that the defendant would not be liable for any damages to such guest riding by his invitation unless the damage was caused by the gross negligence of the owner or operator of the motor vehicle.

Instruction No. 6 set out that the standard of duty of an invited guest is the same as that of the driver; that a guest is under the duty to warn the driver of dangers which would be apparent; and that if by ordinary care and observation the plaintiff could have seen the danger in time to have given warning and failed to do so, the jury would be warranted in finding the plaintiff negligent. Instruction No. 7 set out the com-

parative negligence law. Instruction No. 14 defined gross negligence.

The guest statute, section 39-740, R. S. 1943, exempts from its provisions passengers for hire, and in the case at bar, where the plaintiff paid for transporting her five cattle to her home and was then, by her statement, if believed, compelled to go with them to show where the driver should put them, there appears to be consideration for her transportation.

" 'Compensation' means that which constitutes or is regarded as an equivalent or recompense; that which makes good the lack or variation of something else; that which compensates for loss or privation; amends; remuneration; recompense. The phrase 'without giving compensation therefor' in the statute indicates an intention not to limit compensation to persons specifically paying for transportation in cash or equivalent, or to require that it pass exclusively from the passenger to the driver. 8 Words and Phrases (Perm. ed.) 197; Crawford v. Foster, 110 Cal. App. 81, 293 Pac. 841; Haney v. Takakura, 2 Cal. App. (2d) 1, 37 Pac. (2d) 170; 5 Am. Jur. 634, sec. 239." Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N. W. 2d 451.

The answer alleged that the plaintiff and defendant were pursuing a common purpose and enterprise and that the operation and management of the truck were under their joint control; that plaintiff failed and neglected to warn the driver that the truck was leaving the highway, and failed to keep a lookout ahead; and that her own carelessness and acts of omission contributed to the accident.

This question of joint enterprise, alleged in the answer, was thus in the case, if supported by competent evidence. Instruction No. 3 offered by plaintiff and refused by the court set up certain facts and then said that the question of joint enterprise is not in the case and the defendant was simply a hired man, doing hauling with his truck, and the plaintiff was a passenger, and not

a guest, under the meaning of the guest statute of Nebraska.

This court said, when two traveling men canvassed the same territory, one furnishing the car and the other paying the expenses, that if the one paying expenses also had control over the car they would be engaged in a joint enterprise, and that this question was one the jury should determine. Judge v. Wallen, 98 Neb. 154, 152 N. W. 318.

"The test of a joint enterprise between the driver of an automobile and another occupant is whether they were jointly operating and controlling the movements of the vehicle or had an equal right to do so." Illingworth v. Madden, 135 Me. 159, 192 A. 273, 110 A. L. R. 1090. See, also, Hofrichter v. Kiewit-Condon-Cunningham, 147 Neb. 224, 22 N. W. 2d 703, 164 A. L. R. 1256; 5 Am. Jur., Automobiles, § 501, p. 786.

"* * * in order to have a joint enterprise there must be a community of interest in the object and purposes of the undertaking and an equal right to direct and govern the movements and conduct of each other in respect thereto. Each must have some voice and right to be heard in its control or management. * * * The record in the case before us discloses no community of interest between the defendant and the plaintiff in relation to the automobile, and fails to show the essential element of right of control or management." Trumpfeller v. Crandall, 130 Me. 279, 155 A. 646.

"The question of whether a person riding in a motor vehicle is a guest, or engaged in a joint enterprise, or other relationship, is generally one for determination in the individual case. It must be ascertained from facts establishing the identity of the persons advantaged by the carriage, the relationship between the parties, and the purposes to which the transportation is incident. * * *

"A person riding in a motor vehicle is a guest if his carriage confers only a benefit upon himself and no

benefit upon the owner or operator except such as is incidental to hospitality, social relations, companionship, or the like, as a mere gratuity. However, if his carriage contributes such tangible and substantial benefits as to promote the mutual interests of both the passenger and the owner or operator, * * * he is not a guest." Van Auker v. Steckley's Hybrid Seed Corn Co., *supra*.

In the case at bar, the evidence does not show that it was a joint enterprise, for it lacks the requirement that the plaintiff had any control whatever over the car. It appears that the only duty that she was to perform was to tell the defendant where to back the truck to get her cattle into the corral when they reached her farm.

This court, in a case where, from the evidence, the driver of a car fell asleep, said: "Falling asleep while driving an automobile constitutes evidence of negligence sufficient to require the question of the driver's negligence to be submitted to a jury." Sutton v. Inland Construction Co., 144 Neb. 721, 14 N. W. 2d 387. In the above case, the driver drove his car onto the left side of the road without any justification whatever, and thereby caused the accident.

A few cases may be found which hold that the dangers of running a car while asleep are so obvious as to need no comment, and a failure of the driver to keep awake is prima facie evidence of negligence. The burden passes to defendant to show some unusual cause of his falling asleep which reasonable diligence could not forestall. Whiddon v. Malone, 220 Ala. 220, 124 So. 516; Barmann v. McConachie, 289 Ill. App. 196, 6 N. E. 2d 918.

"The negligence of the driver of an automobile for hire is not attributable to a passenger having no control over the driver further than to indicate the route to be followed or the place to which the car is to be driven." Hofrichter v. Kiewit-Condon-Cunningham, *supra*.

The plaintiff's evidence supported her claim that she was neither a guest in this cattle truck, at the time of

the accident, nor a mere invitee. This was the plaintiff's theory of her case which she presented in her petition, and it was prejudicial error for the trial court to fail to instruct the jury on her theory in this matter. Swengil v. Martin, 125 Neb. 745, 252 N. W. 207.

As far as the record in this case discloses, the plaintiff had absolutely nothing to do with the driving or control of this cattle truck, and nothing to do on the trip until they reached her farm, and the defendant cannot escape liability for his negligence, if any, on the ground of its being a joint enterprise, for "Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects and purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto." Jessup v. Davis, 115 Neb. 1, 211 N. W. 190.

The giving of instructions Nos. 5 and 6 was prejudicial error, and the refusal to give proper instructions offered by plaintiff and not covered by the court's own instructions was also error.

"Instructions to a jury that are inapplicable to the proved facts, and which are calculated to, and probably do, mislead the jury, will, ordinarily, constitute reversible error." Jessup v. Davis, *supra*.

There are other questions involved in this appeal, but since there will be a new trial in any event it becomes unnecessary to discuss other assignments of error in this opinion.

For reasons stated herein, the judgment is hereby reversed and remanded for a new trial.

REVERSED AND REMANDED.