IRENE GUNN, ADMINISTRATRIX OF THE ESTATE OF BURDETTE G. GUNN, DECEASED, APPELLANT, v. COCA-COLA BOTTLING COMPANY OF LINCOLN, ET AL., APPELLEES.

47 N. W. 2d 397

Filed April 6, 1951. No. 32916.

*Mockett, Davies, Pace & Perkins,* for appellant.

*Davis, Stubbs & Healey, Chambers, Holland & Groth,* and *Towle, Young & Mattson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Irene Gunn, as administratrix of the estate of Burdette G. Gunn, deceased, commenced this action in the district court for Lancaster County against Coca-Cola Bottling Company of Lincoln, a corporation, DeRoyce Lusher, Jack Beard, and Margaret Beard. The purpose of the action is to recover damages resulting from the wrongful death of Burdette G. Gunn in an automobile accident. Trial was had and after all parties had rested, only the plaintiff having introduced evidence, the trial court sustained the separate motions for a directed verdict of the defendants Coca-Cola Bottling Company of Lincoln, a corporation, and DeRoyce Lusher. Plaintiff thereupon filed a motion for new trial and from the overruling thereof appeals.

Jack Beard and Margaret Beard, who are doing business as a partnership under the name of Nehi Bottling Company, were made parties defendant because, as the employers of Burdette G. Gunn, deceased, they made payments to the plaintiff pursuant to the provisions of the Workmen's Compensation Act. To the extent of these payments they seek to be subrogated to the rights of the plaintiff herein. However, their rights to subrogation are in no way involved in this appeal so no further mention will be made herein of these parties.

For convenience we shall herein refer to the appellant as such; to the deceased Burdette G. Gunn as Gunn; to the deceased Edward Smetter as Smetter; to the Nehi Bottling Company as Nehi; to the appellee Coca-Cola Bottling Company of Lincoln, a corporation, as Coca-Cola; and to the appellee DeRoyce Lusher as Lusher.

In view of the proceedings had in the trial court we shall consider the record in accordance with the following principles:

"A motion for directed verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and have the benefit of every inference that can reasonably be deduced from the facts in evidence." Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491.

"In an action where there is any evidence which will support a finding for a party having the burden of proof, the trial court cannot disregard it and direct a verdict against him." Hamilton v. Omaha & Council Bluffs St. Ry. Co., 152 Neb. 328, 41 N. W. 2d 139.

"In a law action, it is error for the trial court to direct a verdict for either of the parties on an issue of fact on which the evidence is conflicting. Such issue should be submitted to the jury for its determination." Umberger v. Sankey, 151 Neb. 488, 38 N. W. 2d 21.

Appellant seeks recovery against Lusher on the theory that he was negligent in the operation of his automobile and that such negligence was a proximate cause of the accident which resulted in Gunn's death, and against Coca-Cola on the grounds that Gunn, pursuant to an invitation from Smetter while Smetter was acting within the scope of his employment, was a passenger in Smetter's car for the benefit of and in furtherance of the business of Coca-Cola. Appellant also alleged that Smetter was negligent in operating his car.

The accident, which resulted in the death of Gunn and Smetter, occurred on February 21, 1948, at about 11:22 p. m. on U. S. Highway No. 6 at a point about one-fourth mile east of the village of Emerald in Lancaster County. At the place of the accident U. S. Highway No. 6 is a paved three-lane highway. The lanes from north to south are respectively 13, 13, and 11 feet wide, making a total traveling surface 37 feet wide. The shoulders are each 8 feet wide. The highway at this place runs

east and west and, for a considerable distance in both directions, is level. The night was cold and the pavement was clean and dry. Visibility was good. The accident occurred at about the center of the center lane. It resulted when the 1946 Chevrolet sedan, owned and driven by Smetter, ran head on into the 1936 Oldsmobile convertible coupe, owned and driven by Lusher. Riding in the car with Smetter was Gunn. Riding in the car with Lusher were his brother Eldon and two other people. At the time of the accident the Smetter car was traveling west and the Lusher car east. Neither car was turned over as a result of the accident. After the impact the Smetter car proceeded down the highway about 25 feet. It stopped on the highway facing west. Its location was partly on the north and partly on the center lane. The impact drove the Lusher car some 4 to 5 feet back toward the southwest. It was on the highway facing northeast when it stopped. It was mostly across the south lane but did extend over and onto the center lane. As has already been stated Gunn and Smetter were killed instantly. None of the people in the Lusher car were killed.

We shall first consider the question of whether the evidence presents any issue of fact for the jury as to any liability on the part of Coca-Cola.

Gunn was a route salesman for Nehi. Nehi's products included Upper 10. Gunn's route included the Sunset Party House at Emerald. The Sunset Party House is a dance place in Emerald owned and operated by Harry E. Nourse and J. L. Stroud. In the winter of 1947-1948 dances were held there every Saturday night. When dances were held soft drinks were sold.

Smetter was a route salesman for Coca-Cola. Coca-Cola had an exclusive franchise to sell bottled Coca Cola in an area which included Lincoln and Emerald. It had a plant in Lincoln located at 2120 G Street which served this area. Smetter's route was in Lincoln. His duties were to deliver bottled Coca Cola to the customers

on his route, collect empties, and collect for the deliveries except when the customer had made arrangement for credit. Trucks were furnished by Coca-Cola for this purpose. While the Sunset Party House in Emerald, which was a regular customer, was not on Smetter's route, the evidence shows the salesmen for Coca-Cola were directed and expected to take care of Coca-Cola's regular customers, whether on their respective routes or not, whenever they found a customer who needed Coca Cola, provided it was reasonably convenient for them to do so. This, even though it was outside of their regular hours of duty. These salesmen were given to understand it was part of their duties to build good relations with Coca-Cola's customers. The salesmen all had keys to the plant and were authorized to use the trucks of Coca-Cola for this purpose. It was also understood by Coca-Cola that if the amount to be hauled was small the salesmen could use their own cars for that purpose, although not encouraged to do so. The record shows that on occasions salesmen had used their own cars. However, they were given directions never to haul products of a competitor nor to take any riders with them.

On Saturday evening February 21, 1948, about 9 or 9:15 p. m., Mr. and Mrs. Burdette G. Gunn came to the Sunset Party House for a social evening. They were accompanied by their friends Mr. and Mrs. Leo Hugelman, having come out in the latter's car. They were given a booth. There was a large crowd and the supply of soft drinks was getting low. Shortly after he arrived Gunn talked to Harry E. Nourse, one of the men who was operating the place, about it. Nourse was acquainted with both Gunn and Smetter and knew they were salesmen for Nehi and Coca-Cola respectively.

About 10 p. m. Nourse came to the booth where Gunn and his party were seated to talk to Gunn. Gunn had previously told Nourse he would not let him run out of pop. Nourse told Gunn he would have to go and get

some pop and to bring back ten cases. Mr. and Mrs. Smetter, who were out to the Sunset Party House for a social evening, had come to the Gunn booth in the meantime and were present. Gunn then told Nourse that Smetter was going in with him. Nourse then told Gunn to split the order, and have Smetter bring five cases of Coca Cola and for Gunn to bring five cases of Upper 10.

Gunn and Smetter left the Sunset Party House shortly thereafter in Smetter's car, Gunn not having a car of his own. They obtained the Coca Cola from the Coca-Cola plant and the Upper 10 from the Nehi plant. It was on their return to the Sunset Party House with this load that the accident happened.

As to Coca-Cola the burden was on the appellant to show that the wrongful death of Gunn was caused by Smetter's negligence and that Coca-Cola was responsible therefor.

"For all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions the servant alone is responsible." Dafoe v. Grantski, 143 Neb. 344, 9 N. W. 2d 488.

From the foregoing factual statement of what the record discloses a jury would be fully supported in finding that at the time of the accident Smetter was acting within his authority as a salesman for Coca-Cola in delivering its products to a regular customer although after hours, outside of his route, and in his own car. But from that fact alone it could not reasonably be inferred that Gunn was a passenger in Smetter's car for

the benefit of and in furtherance of the business of Smetter's employer Coca-Cola.

In Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N. W. 2d 451, we said: "* * * we conclude that a person riding in a motor vehicle is a guest if his carriage confers only a benefit upon himself and no benefit upon the owner or operator except such as is incidental to hospitality, social relations, companionship, or the like, as a mere gratuity, and no recovery can be had under our statute except for gross negligence. However, if his carriage contributes such tangible and substantial benefits as to promote the mutual interests of both the passenger and the owner or operator, or is primarily for the attainment of some tangible and substantial objective or business purpose of the owner or operator, he is not a guest. If the latter rule be applicable to the present case, plaintiff could recover for ordinary negligence * * *. See 4 Blashfield, Cyclopedia of Automobile Law, sec. 2292; Annotations, 82 A. L. R. 1365, 95 A. L. R. 1180; Doherty v. Edwards, 227 Ia. 1264, 290 N. W. 672." The latter would be true if the evidence would sustain such a finding, whether under express or implied authority, but whether there is any evidence to sustain such a finding is a question of law.

The extent of the authority conferred upon an agent may be a question of fact but the question of whether there is any evidence to prove it is one of law.

The evidence, without dispute, shows that Gunn had, in effect, solicited the business of the Sunset Party House from Nourse and had received it, and that Smetter had agreed to go with him to Lincoln to get it, Gunn not having a car, before Smetter ever knew he was to bring out any of his employer's products. It was only after Nourse told Gunn to bring ten cases and Gunn told Nourse that Smetter was going to Lincoln with him for the purpose of bringing it out that a change was made in the order. No request to Nourse was made by either Gunn or Smetter to do so but apparently he did so of his

own accord. Up to this point whatever Smetter had agreed to do for Gunn was a friendly accommodation and on a social basis. It had absolutely nothing to do with Coca-Cola. Nothing happened thereafter to change this relationship. The evidence will sustain no other finding than that Gunn was a guest of Smetter, the latter having taken him as a friendly accommodation.

It was Smetter's privilege to invite whomever he wanted to ride in his car as his guest and to transport them as a friendly act of accommodation. But that fact alone would not make Smetter's employer liable because thereof. If there was evidence from which it could be found that in order to get any part of the order for Coca-Cola Smetter agreed to haul Gunn that might present another question, but such is not the situation here.

What the court said of plaintiff in Bushouse v. Brom, 297 Mich. 616, 298 N. W. 303, is here applicable to Gunn. There the court said: "In the instant case it was clearly the friendship and social relation of these parties which resulted in plaintiff going on the trip with defendant. It was not a commercial arrangement or one in which the owner or driver of the automobile was induced to transport a passenger for an agreed consideration."

"* * * the general rule (is) that an employee using an automobile in his employer's business has no implied or apparent authority to invite others to ride with him, and that, if a passenger who accepts the unauthorized invitation of the employee is injured, the employer is not liable, for the reason that the passenger is not a guest of his but merely a guest of his employee. Liggett & Myers Tobacco Co. v. De Parcq, 8 Cir., 66 F. 2d 678, 685, citing: White v. Brainerd Service Motor Co., 181 Minn. 366, 232 N. W. 626, 627; Dearborn v. Fuller, 79 N. H. 217, 107 A. 607; Higbee Co. v. Jackson, 101 Ohio St. 75, 128 N. E. 61, 14 A. L. R. 131; Union Gas & Electric Co. v. Crouch, 123 Ohio St. 81, 174 N. E. 6, 74 A. L. R. 160; Chajnacki v. Dougherty, 254 Mich. 296, 236 N. W. 789;

Rolfe v. Hewitt, 227 N. Y. 486, 125 N. E. 804, 14 A. L. R. 125; Psota v. Long Island R. Co., 246 N. Y. 388, 159 N. E. 180, 62 A. L. R. 1163; Monnet v. Ullman, 129 Or. 44, 276 P. 244; Hughes v. Murdoch Storage & Transfer Co., 269 Pa. 222, 112 A. 111; Wing v. Martin, 101 Vt. 108, 141 A. 602. See, also, 5 Am. Jur. pp. 728-729, §§ 393, 394, and Annotations to Psota v. Long Island R. Co., N. Y., supra, 62 A. L. R. 1163, 1168." Metropolitan Life Ins. Co. v. Gosney, 101 F. 2d 167.

In fact, appellant admits that the evidence submitted does not establish facts from which it could be found that Smetter had either express or implied authority to transport social guests at the risk of his employer.

"In an action where the evidence produced by the plaintiff is not sufficient to support a verdict in his favor, it is the duty of the trial court to direct a verdict for the defendant." Hamilton v. Omaha & Council Bluffs St. Ry. Co., *supra*.

Appellant complains of the court's exclusion, on objection made thereto, of the pretrial deposition taken of Jefferson Davis Martin. She also complains of the exclusion of separate questions and answers offered therefrom. She claims they are admissions against interest and admissible as such. Martin was the president, sole owner of all common stock, and in active management and control of Coca-Cola. We have very recently set out the principles here applicable in Loyal's Auto Exchange, Inc. v. Munch, 153 Neb. 628, 45 N. W. 2d 913. It would serve no useful purpose to repeat them here.

Martin testified at the trial of this case. We have analyzed and compared his testimony there given and that found in the deposition. It is for all practical purposes the same. To have admitted it would have been cumulative only of what had already been admitted. But, for the sake of argument only, let us assume that it should have been admitted. To do so will not help the appellant for it would add nothing to the case she has already made. It would leave the factual situation

in the same status, that is, insufficient to support a verdict against Coca-Cola.

Having come to the conclusion that appellant did not make a case against Coca-Cola we are next confronted with the contention of both Lusher and Coca-Cola that the following principle is then controlling:

" 'Where a verdict is returned against a plaintiff and in favor of several defendants, on different, distinct and separate defenses pleaded separately by them, a single joint motion for a new trial against them all is insufficient, and it should be overruled if the verdict is good as to any one of the defendants.' Lydick v. Gill, 68 Neb. 273. See, also, Davy v. Aevermann, 110 Neb. 62." Koehler v. Farmers State Bank, 112 Neb. 590, 200 N. W. 52. See, also, Long & Smith v. Clapp, 15 Neb. 417, 19 N. W. 467; Dorsey v. McGee, 30 Neb. 657, 46 N. W. 1018; Scott v. Chope, 33 Neb. 41, 49 N. W. 940; Thomas v. Fundum, 135 Neb. 728, 283 N. W. 839; Washington v. Beselin, 141 Neb. 638, 4 N. W. 2d 753. If error assigned in such motion for new trial is not good as to all it is not good as to any.

That appellant sought recovery against Coca-Cola and Lusher on separate grounds has already been set forth herein. Both Coca-Cola and Lusher filed separate answers, had different counsel, made separate defenses, and made separate motions for directed verdicts. The court sustained each of said motions and directed verdicts accordingly. Thereupon appellant filed a motion for new trial in the following language: "Comes now the plaintiff and moves the court to set aside and vacate the judgment entered in the above entitled matter and to grant the plaintiff a new trial against the defendants Coca-Cola Bottling Co. of Lincoln, a Corporation, and DeRoyce Lusher, for the following reasons:"

We find this motion, as made, is subject to the foregoing rule. Since the trial court's overruling thereof was correct as to Coca-Cola it must also be sustained

as to Lusher as the questions raised by appellant as to Lusher are not here for our consideration.

In view of the foregoing we sustain the judgment of the trial court overruling appellant's motion for a new trial.

AFFIRMED.