CARROLL BISHOP, A MINOR, BY AND THROUGH HIS FATHER. AND NEXT FRIEND, E. A. BISHOP, APPELLEE, V. HOWARD D. SCHOFIELD, APPELLANT.

58 N. W. 2d 207

Filed April 24, 1953.   No. 33306.

*H. V. Kanouff,* for appellant.

*Chambers, Holland & Groth* and *Clyde R. Worrall,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Carroll Bishop, a minor, by and through his father and next friend, E. A. Bishop, brought this action in the district court for Saunders County against Howard D. Schofield. It is a tort action based on the conduct of defendant while driving his automobile, which conduct it is alleged was negligent and which it is alleged resulted in the automobile being hit by a Chicago, Burlington and Quincy Railroad Company train, and severely injuring the plaintiff. The purpose of the action is to recover damages for disability and pain which plaintiff suffered as a result thereof.

Trial was had on March 18 and 19, 1952. After plaintiff had adduced all of his evidence, defendant moved for a directed verdict in his favor, basing his motion on the following grounds:

"First: There is no proof or evidence that the plaintiff, at the time of the accident, had any other relationship to the defendant other than a guest in his automobile, and that there is no evidence of gross negligence upon the part of the defendant.

"Second: That the plaintiff has failed to prove any

negligence against defendant, and that if the evidence taken in its most favorable light for the plaintiff shows negligence, the evidence of plaintiff conclusively shows the plaintiff to have been guilty of contributory negligence, guilty of contributory negligence more than slight."

The trial court sustained this motion and dismissed the case. On March 26, 1952, plaintiff filed a motion for new trial. This motion the trial court sustained. It is from this ruling that defendant has appealed.

The appeal raises the question of whether or not, in the first instance, the court was correct in sustaining defendant's motion for a directed verdict. In determining whether or not appellee made a prima facie case the following basic principles are applicable:

"A motion for directed verdict or its equivalent must, for purpose of decision thereon, be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Davis v. Spindler, *ante* p. 276, 56 N. W. 2d 107.

"In an action where there is any evidence which will support a finding for a party having the burden of proof, the trial court cannot disregard it and direct a verdict against him." Davis v. Spindler, *supra*. See, also, Kuska v. Nichols Construction Co., 154 Neb. 580, 48 N. W. 2d 682; Gunn v. Coca-Cola Bottling Co., 154 Neb. 150, 47 N. W. 2d 397; Komma v. Kreifels, 144 Neb. 745, 14 N. W. 2d 591.

Appellee is a nephew of appellant and was living with his parents on their farm located some 5 miles northwest of Gretna. He was 17 years of age and a graduate of Gretna High School. Appellant and his wife were living on a farm some 3½ to 4 miles north of Ashland. He had been suffering with the flu and because

thereof was unable to do all of his farm work. Consequently, on May 30, 1951, his wife went to appellee's home and there, with the approval of appellee's father, employed appellee to work for appellant as a farm laborer, agreeing to pay him the going wages for this class of work plus board and room. Appellee thereupon accompanied appellant's wife and immediately began his employment. It should here be stated that these two families were not only related but on friendly social relations, frequently visiting back and forth in each other's homes.

Appellee continued in appellant's employ until the time of the accident, doing the chores and such other work as the weather permitted. On June 6, 1951, the appellant and appellee spent most of the day mounting a mower on the back of a tractor. After they had done so they took the tractor to Vern Stuart's farm, which is located about three-fourths of a mile away. The Stuarts are appellant's in-laws. They drove the tractor to the Stuart farm to put some air in a rear tire, the Stuarts having an air compressor. They returned from the Stuart place some time between 4:15 and 4:30 p. m. Upon their return appellee did the chores and then ate supper. Supper had been prepared early so appellant's wife could get the dishes washed and put away as she was expecting company, she having invited appellee's parents to come over and spend the evening. Appellee was not at that time aware of this arrangement.

After eating his supper appellee retired to another room to watch television. While appellee was watching television appellant came into the room and asked him to go over to his father-in-law's with him, saying, "Come on, go over to the Stuarts with me." Appellee got up and went along not knowing what appellant wanted him for, although he later learned it was to get some pies that Mrs. Stuart had prepared as dessert for the company they were having that evening.

Located some 150 to 200 yards west of appellant's

farm home is the right-of-way of the Chicago, Burlington and Quincy Railroad Company. It traverses appellant's farm from north to south. Running west from appellant's home is his private driveway which crosses this railroad right-of-way on his farm. Extending east from the right-of-way, at a point some 300 to 350 yards north of where the driveway crosses it, is a row of trees. Although there is a slight rise in the driveway just west of the house the crossing is visible from the house and, after crossing this ridge, the right-of-way north of the crossing is visible from all points on the driveway, the only obstruction being the trees already referred to. Appellee was familiar with this situation as he had passed over this private driveway and crossing many times both as a driver and passenger.

Appellant and appellee got into appellant's car, a 1950 Chevrolet sedan. It was parked in front of the house at a point about 150 yards from the track. Appellant drove and appellee sat on the right-hand side of the front seat. The car was in good condition. The time was about 6 p. m., it was still daylight, and, although it was cloudy, visibility was good. They first traveled over the slight rise, then around the south side of a small mud hole located some 100 feet from the track, and then straight toward the track. Appellee was sitting sideways facing appellant and visiting with him. He did not at any time watch the tracks or look to the north except as he may have looked straight ahead. Appellant, after passing the mud hole, was driving in second gear at a speed of about 6 or 7 miles an hour. Just as the front wheels of the car crossed the first rail of the tracks appellee looked to the right and saw the front of a train engine some 50 feet away. Upon sight of the engine he passed out. Appellant did not testify.

The engine hit the car on the right side near its center and, after carrying it some 900 to 1,000 feet down the track toward the south, dropped it on the right side of the right-of-way. The train continued until it was

able to stop at a point where the engine was about 1,500 feet south of the place where the accident occurred. At the time of the impact the train was going about 33 miles an hour. The appellee was severely injured.

Was appellee riding in appellant's car as a guest? We have often said that generally speaking the question of whether a person riding in a motor vehicle is or is not a guest depends for its determination upon the facts of each case. See, Hansen v. Lawrence, 149 Neb. 26, 30 N. W. 2d 63; Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N. W. 2d 451.

As stated in Van Auker v. Steckley's Hybrid Seed Corn Co., *supra:* "It must be ascertained from the facts establishing the identity of the persons advantaged by the carriage, the relationship between the parties, and the purposes to which the transportation is incident. To these facts we then apply logical construction of statutory words and phrases approved by definitum-precedent." See, also, Hansen v. Lawrence, *supra.*

In this regard: "If the evidence is undisputed, or such that minds of men could not reasonably arrive at any other conclusion, the question is one for decision by the court as a matter of law; otherwise, it is a question for the jury to decide as other issuable facts in the case. 64 C. J. 549; Mick v. Oberle, 124 Neb. 433, 246 N. W. 869." Van Auker v. Steckley's Hybrid Seed Corn Co., *supra.*

Section 39-740, R. R. S. 1943, insofar as here material, provides: "For the purpose of this section, the term 'guest' is hereby defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor, * * *."

In Van Auker v. Steckley's Hybrid Seed Corn Co., *supra,* we said of this provision: "The phrase 'without giving compensation therefor' (Comp. St. Supp. 1939, sec. 39-1129) indicates an intention not to limit compensation to persons specifically paying for transportation.

in cash or equivalent, or to require that it pass exclusively from the passenger to the driver."

And therein we went on to say: "A person riding in a motor vehicle is a guest if his carriage confers only a benefit upon himself and no benefit upon the owner or operator except such as is incidental to hospitality, social relations, companionship, or the like, as a mere gratuity. However, if his carriage contributes such tangible and substantial benefits as to promote the mutual interests of both the passenger and the owner or operator, or is primarily for the attainment of some tangible and substantial objective or business purpose of the owner or operator, he is not a guest." See, also, Hansen v. Lawrence, *supra*.

We find the evidence here adduced, without dispute, establishes appellee was riding as a guest in appellant's car.

Since appellee was riding as a guest he cannot recover unless the evidence adduced is sufficient to support a finding that appellant was guilty of "gross negligence." See § 39-740, R. R. S. 1943.

"Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It indicates the absence of even slight care in the performance of a duty." Komma v. Kreifels, *supra*.

"What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence." Komma v. Kreifels, *supra*.

"As in so many other instances of negligence law, the question whether an operator of an automobile involved in an accident at a railroad crossing was guilty of gross negligence, recklessness, etc., within the meaning of a guest statute, depends upon the facts involved in each case. Accordingly, it is impossible to state any general rule on the question, other than to point out that the general principles laid down by the courts

under the guest statutes * * * apply with equal force, of course, in cases involving railroad crossing accidents." Annotation, 143 A. L. R. 1144.

"* * * a verdict should only be directed where the court can clearly say that it fails to approach the level of negligence in a very high degree under the circumstances." Thompson v. Edler, 138 Neb. 179, 292 N. W. 236.

"A verdict should not be directed nor a cause of action dismissed unless a court can definitely determine that the evidence of defendant's negligence, when taken as a whole, fails to reach that degree of negligence that is considered gross." Komma v. Kreifels, *supra.*

"Broadly and generally speaking, the question of negligence or contributory negligence vel non is a question of fact for the jury, but, as we have hereinbefore pointed out, if it is a matter of declaring a standard of conduct or of applying such standard to a set of undisputed conduct facts which are of such a nature that reasonable men could not differ in opinion as to whether or not the exhibited conduct conforms to the established standard, then the matter is for the court." Ulrikson v. Chicago, M., St. P. & P. Ry. Co., 64 S. D. 476, 268 N. W. 369.

There is a reasonable inference arising from the evidence adduced that appellant was guilty of negligence in failing to maintain a proper lookout for trains as he approached this private crossing and, as a result thereof, drove onto it without seeing the train approaching from the north which caused the accident. However, in view of the standards which this court has applied in guest cases, we do not think his negligence in this regard arises to the degree of gross negligence within the meaning of the statute.

In view of the fact that we find appellee did not make a prima facie case we find it unnecessary to discuss the second ground for the motion; that is, that appellee was guilty of conduct constituting contributory negligence

of such a character that it would defeat his rights to recover under section 25-1151, R. R. S. 1943.

Having come to the conclusion that the trial court was right in the first instance, we set aside its order granting appellee a new trial and direct it to re-enter the original order sustaining appellant's motion for a directed verdict and dismissing the action.

REVERSED AND REMANDED WITH DIRECTIONS.