IN RE ESTATE OF JAMES E. NELSON, DECEASED.
ALEX PESTER AND HARRY LEHR, ADMINISTRATORS OF THE ESTATE OF EDWARD PESTER, DECEASED, APPELLANTS, V. JAMES NELSON AND AUGUST GRASSMICK, ADMINISTRATORS OF THE ESTATE OF JAMES E. NELSON, DECEASED, APPELLEES.
95 N. W. 2d 491

Filed March 20, 1959.   No. 34522.

*Townsend & Youmans,* for appellants.

*Wright, Simmons & Harris* and *Neighbors & Danielson,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action based on a claim filed in the county court of Scotts Bluff County, Nebraska, by Alex Pester and Harry Lehr, administrators of the estate of Edward Pester, deceased, in the estate of James E. Nelson, deceased, the administrators of which are James Nelson and August Grassmick. The claim was disallowed. From the order of disallowance the administrators of the estate of Edward Pester appealed to the district court. For the purposes of this opinion the administrators of this estate will be referred to as plaintiffs and the administrators of the estate of James E. Nelson as defendants. Edward Pester will be referred to as Pester and James E. Nelson as Nelson.

For the purpose of the case after appeal from the county court the action will be treated as one for damages by plaintiffs against the defendants. The case was tried in the district court, and at the conclusion of the evidence of plaintiffs the defendants moved for a directed verdict. The action was for damages on the ground of alleged negligence. The basis of the motion was that the evidence failed to show that Nelson was guilty of gross negligence; that it did show that Pester as a guest in the automobile operated by Nelson was guilty of such contributory negligence as to bar a recovery; and that the evidence was insufficient to establish a cause of action in favor of the plaintiffs. The motion was sustained. Thereafter, following the filing of a motion for new trial which was overruled, the plaintiffs appealed to this court.

By the petition on which the case was tried it is alleged, to the extent necessary to set forth herein, that on January 21, 1957, Nelson was the owner of and was

operating a truck in an easterly direction on a highway about 3 miles west of the city of Scottsbluff, Nebraska, west of the right-of-way of the Union Pacific Railroad Company which intersects the highway on an angle from the southeast to the northwest; that at the time Pester was a passenger in the truck; that as the truck approached this intersection a train was also approaching from the southeast; that Nelson caused the truck to collide with the train causing the death of Pester; that the proximate cause of the death was the gross negligence of Nelson; and that the gross negligence was as follows: Operation of the truck at a rate of speed in excess of that which was reasonable and prudent under the circumstances, failure to keep a proper lookout, failure to have the truck under control, failure to stop before the collision with the train engine, and operation of the truck head-on into the train engine. The petition does not so allege but Nelson was also killed in the accident.

To the extent necessary to state herein the answer contains a general denial after which it is alleged affirmatively that Pester was a guest in the truck and as such was guilty of carelessness, negligence, and failure to exercise due care for his own safety in that he failed to keep a proper lookout for the railroad crossing and the approaching train, that he failed to warn Nelson of the approach of the train, and that he failed to protest the manner in which Nelson was operating the truck.

Before proceeding further it is pointed out that the parties have stipulated that Pester was a guest passenger in the truck operated by Nelson which was the truck involved in the collision.

From the testimony adduced by the plaintiffs it appears that on January 21, 1957, at about 10 a.m., Nelson was driving a pick-up truck eastward on a highway which leads into the city of Scottsbluff, Nebraska. The highway at the place of concern is paved. About 3 miles west of the city this highway is crossed by a track

of the Union Pacific Railroad Company over which trains move. This track extends from southeast to northwest. The surrounding area is practically level and there are no obstructions to obscure vision over a broad area. This was a clear day. On this day a train approached the intersection from the southeast. The engineer on the train testified that the headlight on the engine was lighted and that about one-fourth mile before reaching the intersection he started sounding the whistle .on the engine. When he was about halfway between the point where he started sounding the whistle and the intersection he saw Nelson's truck which he said was about the same distance as the train from the intersection. The train was moving at a speed of 50 miles an hour and he estimated the speed of the truck at about the same rate as the train. He did not observe that the speed of the truck was lessened until just before the truck and the train collided when Nelson swerved to the right off the highway in an effort to avoid the collision. The truck collided with the left front corner of the engine. The train was stopped some distance to the northwest. This engineer never left his engine after the collision.

There were two other witnesses to the accident, one of whom testified. He said that he was in a truck back of and going in the same direction as Nelson. He estimated his own speed at 50 to 60 miles an hour and that he had the impression that Nelson was going at a higher rate of speed. He did not notice any slackening of speed before Nelson turned to the right, immediately after which the collision occurred.

By other evidence adduced by the plaintiffs it was made to appear that about 145 feet west of the intersection a tire mark started and extended to the point of collision. All of the mark except about the last 10 feet was on the pavement. The truck in which Pester and Nelson had been riding came to rest about 290 feet northwest of the intersection and on the west side of

the railroad right-of-way. It appears that the two men were killed instantly.

This it is thought is a fair summary of the evidence as it appears in the record relating to the causation of the collision and of the consequent death of these two men. It was on this evidence that the defendants based their motion for a directed verdict.

The parties having stipulated that Pester was a guest in the truck of Nelson, the determination of the question of whether or not the trial court erred in sustaining the motion must depend upon an analysis of the evidence and an application thereto of section 39-740, R. R. S. 1943, commonly referred to as the "guest" statute, which is the following: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of such motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle. For the purpose of this section, the term 'guest' is hereby defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor, but shall not be construed to apply to or include any such passenger in a motor vehicle being demonstrated to such passenger as a prospective purchaser."

Under this statute, it is to be observed that no recovery may be had in this case unless Nelson was guilty of gross negligence. Gross negligence, within the meaning of this statute, is defined as follows in Holliday v. Patchen, 164 Neb. 53, 81 N. W. 2d 593: "Gross negligence within the meaning of the motor vehicle guest statute is great and excessive negligence or negligence in a very high degree. It indicates the absence of slight care in the performance of a duty." See, also, Lincoln v. Knudsen, 163 Neb. 390, 79 N. W. 2d 716.

There is no fixed rule for the ascertainment of what is gross negligence, but whether or not gross negligence exists must be determined from the facts and circumstances in each case. See, Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041; Pavlicek v. Cacak, 155 Neb. 454, 52 N. W. 2d 310.

Also what, under certain circumstances, might amount to only slight negligence may, under different circumstances, amount to gross negligence. See Paxton v. Nichols, 157 Neb. 152, 59 N. W. 2d 184.

Although reference to and application of these rules is required in the present case, precedent appears to furnish the pattern for the disposition of the matters under consideration.

The case of Bishop v. Schofield, 156 Neb. 830, 58 N. W. 2d 207, presents such a parallel in point of facts with this one, as they relate to sufficiency of evidence for submission to a jury of the question of whether or not there was here prima facie proof of gross negligence, that little more is necessary to arrive at a decision herein than to delineate the comparison. This is true unless the following appearing in the opinion in that case is to be rejected: "There is a reasonable inference arising from the evidence adduced that appellant was guilty of negligence in failing to maintain a proper lookout for trains as he approached this private crossing and, as a result thereof, drove onto it without seeing the train approaching from the north which caused the accident. However, in view of the standards which this court has applied in guest cases, we do not think his negligence in this regard arises to the degree of gross negligence within the meaning of the statute."

No reason which impels a departure from this pronouncement becomes apparent.

In delineation of the comparison it is found that in Bishop v. Schofield, *supra,* a host driver of an automobile with a guest to his right approached and drove onto a railroad track into the path of and was struck

by a train which was approaching from the right which could readily have been seen in time, in the exercise of ordinary care, to avoid a collision. Vision was not obstructed. There was no evidence of excessive speed and no reason or excuse for being struck by the train except inattention and failure to look and to see that which was in plain view. The guest was injured in the collision between the automobile and the train.

All of these things were true in the instant case except here the host and guest were killed. There was no evidence that the host in either instance was driving in excess of a statutory speed limit. It is probable under the evidence that the driver in the instant case was driving at a higher rate of speed as he approached the intersection than was true in Bishop v. Schofield, *supra,* but there was no apparent difference in the opportunity to see the approaching train. There was a difference which however had no controlling legal significance. The difference was that the driver in Bishop v. Schofield, *supra,* was driving on a private road which was intersected by the railroad right-of-way and track whereas the driver in the present case was operating on a public highway of the state.

In the light of this it appears that what was said in Bishop v. Schofield, *supra,* is equally applicable to the conduct of Nelson in this case. If there was no evidence of gross negligence in that case it can hardly be said on comparison that there was in the present case.

It follows that it may not be said here that Nelson was guilty of gross negligence and in consequence of this the judgment of the district court is correct and proper, and should be affirmed.

AFFIRMED.