RALPH WARMBIER, APPELLEE, V. ORVAL ZEURLEIN, APPELLANT.

155 N. W. 2d 364

Filed December 29, 1967. No. 36647.

Rickerson & Homan, for appellant.

Sidner, Gunderson, Svoboda & Schilke, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This action is a guest-passenger case brought to recover damages for injuries as a result of the alleged gross negligence of the defendant. Defendant moved for a directed verdict at the conclusion of plaintiff's evidence. When this motion was overruled, defendant rested without putting on any evidence, and renewed his motion for directed verdict. This was overruled, and the case was submitted to the jury, which returned a verdict in favor of the plaintiff in the sum of $8,500. Defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial was overruled, and this appeal was perfected.

The accident occurred at a railroad crossing approximately 1½ miles east of Mead, Nebraska, on U. S. Highway No. 30-A, on Sunday night, February 21, 1965. The plaintiff and the defendant sometime in the afternoon met at a restaurant in Fremont and decided to go to Valley for a beer. They had a beer, spent some time in Valley, and then went to Leshara. After visiting for a while in Leshara, they went to Venice where they had another beer and the defendant played pool. When they left Venice, they proceeded west on U. S. Highway No. 30-A. The defendant was driving his car at an approximate speed of 50 to 55 miles an hour. The night was clear and cold. According to the plaintiff there was

nothing unusual about the defendant's driving. The car lights were on, but the record does not indicate whether they were on high beam or low beam. The plaintiff testified that he was sitting in the right front seat, leaning back with his arm over the back of the seat, looking toward the defendant, and carrying on a conversation with him. The first thing that happened out of the ordinary was when the defendant said, " 'My God, a train.' " Plaintiff thinks he looked up and somehow he visualizes a yellow refrigerator car. He remembers nothing else concerning the accident.

A highway patrolman who was approaching the scene of the accident at the time in question testified that he was driving down U. S. Highway No. 30-A from the west proceeding east. When he was approximately one-half mile west of the railroad tracks, he observed a freight train crossing the highway and the lights of a car coming over the crest of a hill, approximately three-tenths of a mile east of the track. When the train cleared there were no lights east of the crossing, and the patrolman stopped to investigate. He found a car in the middle of the road, 69 feet east of the edge of the tracks, facing east. There were two occupants, both of whom were unconscious. There is a crossarm or an "X" sign, with two red blinkers on each side of the track. The signal on the west of the track was operational as the patrolman approached the train. There is no evidence of any nature as to whether the signal east of the track was also operational, except an answer to an interrogatory by the defendant that he did not see any lights. The patrolman observed a gouge mark 5 feet south of the centerline of the highway, near the track, which he testified showed where the car spun around and went back toward the east after colliding with the train. There were no other tire marks.

Plaintiff was a guest passenger in the defendant's automobile. Section 39-740, R. R. S. 1943, is therefore material herein. So far as pertinent, it is as follows: "The

owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of such motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle."

While the plaintiff's testimony mentions a beer on two occasions during a period covering the afternoon and evening, there is no contention in the record that the defendant was driving while under the influence of intoxicating liquor. This case, therefore, is not within that exception.

There is no fixed rule for the ascertainment of what constitutes gross negligence, but whether or not gross negligence exists must be determined from the facts and circumstances of each case. Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041.

"Gross negligence," within the meaning of the motor vehicle guest statute, has been defined by this court as great or excessive negligence, or negligence in a very high degree. It indicates the absence of slight care in the performance of a duty. Holliday v. Patchen, 164 Neb. 53, 81 N. W. 2d 593.

The burden of proof is upon the guest who seeks to recover to prove by a preponderance of the evidence that the owner or operator of the automoblie in which he was a guest was guilty of gross negligence. Failure to so prove, or the fact that the operator of the automobile may have been guilty of ordinary negligence, is insufficient to warrant a recovery in favor of the guest. Cunning v. Knott, 157 Neb. 170, 59 N. W. 2d 180. In that case, we held gross negligence had not been proved although the operator, after having consumed intoxicating liquor, drove his car in the daytime at an illegal and negligent rate of speed over the crest of a hill on a country road where he was unable to see what was ahead

of him on the other side in time to avoid an accident or to see and comply with the mandate of a stop sign.

The only ultimate fact established by the evidence herein from which negligence may be inferred is the fact that defendant's car at night hit a freight train crossing the highway which he failed to observe in time to avoid the collision.

This case appears to be controlled by our holdings in Pester v. Nelson, 168 Neb. 243, 95 N. W. 2d 491, and Bishop v. Schofield, 156 Neb. 830, 58 N. W. 2d 207, which are not substantially distinguishable on the facts. In these cases, the collisions occurred during the daylight hours and the trains struck the cars on the crossings.

In Pester v. Nelson, *supra,* the guest and the defendant driver lost their lives when the defendant's truck collided with a train crossing a highway 3 miles west of the city of Scottsbluff, Nebraska. The collision occurred at 10 a.m. on a clear day. The area was level and there was no obstruction over a broad area to obscure vision. The evidence justified an inference of excessive speed on the part of the truck. There was a tire mark of 145 feet to the point of impact, and obviously there was inattention and a failure to look and see that which was in plain view. In that case we affirmed the sustaining of a motion for a directed verdict on the theory that the facts adduced did not prove the defendant to be guilty of gross negligence.

In Bishop v. Schofield, *supra,* damages were sought from a defendant who drove his automobile in front of a railroad train, severely injuring the guest. The collision occurred at the crossing of defendant's private driveway and the railroad right-of-way. In that case, we said: "There is a reasonable inference arising from the evidence adduced that appellant was guilty of negligence in failing to maintain a proper lookout for trains as he approached this private crossing and, as a result thereof, drove onto it without seeing the train approaching from the north which caused the accident. How-

ever, in view of the standards which this court has applied in guest cases, we do not think his negligence in this regard arises to the degree of gross negligence within the meaning of the statute."

Kiser v. Christensen, 163 Neb. 155, 78 N. W. 2d 823, involves a situation where the guest warned the driver of an oncoming train when the car was 80 feet from the track and the train was approaching 200 to 300 feet away. The car was traveling 20 to 25 miles an hour. The guest testified the driver failed to slow down and struck the train. The collision occurred at night and the headlights of the engine were on. The defendant's testimony suggested that he "froze up" in the emergency. We concluded that the evidence was insufficient to warrant the submission of gross negligence to the jury.

No two cases are exactly alike. However, there is sufficient similarity in the instant case to those discussed that we conclude the issue of gross negligence should not have been submitted herein. We determine, as a matter of law, that plaintiff failed to make a prima facie case.

Having come to the conclusion that the plaintiff did not make a prima facie case, we find that the motion for a directed verdict should have been sustained at the close of plaintiff's case.

For the reasons given, we reverse the judgment herein, and dismiss the action.

REVERSED AND DISMISSED.

BOSLAUGH and McCOWN, JJ., dissenting.

Although there was no direct evidence as to whether the signal on the east side of the crossing was operational, we believe that the jury could have inferred that it was operational. We are of the opinion that the evidence in this case presented a question for the jury on the issue of gross negligence, and that the decision in Carter v. Chicago, B. & Q. R.R. Co., 170 Neb. 438, 103 N. W. 2d 152, supports this conclusion.