EDNA KOMMA, ADMINISTRATRIX, APPELLANT, V. ROBERT KREIFELS, APPELLEE.

14 N. W. 2d 591

FILED MAY 19, 1944. No. 31785.

*Lloyd E. Peterson* and *Betty Jean Peterson,* for appellant.

*Jessen & Dierks, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER and WENKE, JJ.

SIMMONS, C. J.

This is an action brought to recover damages for the death of plaintiff's intestate, and involves the guest statute. Trial was had. At the close of all the evidence, the trial court sustained a motion to dismiss plaintiff's action on the ground that gross negligence was not shown. Plaintiff appeals. We reverse the judgment of the trial court and remand the case.

We state the evidence relative to the issue presented in the light of the rule that " 'If there be any testimony before the jury, by which a finding in favor of the party on whom rests the burden of proof can be upheld, the court is not at liberty to disregard it, and direct a verdict against him.' * * * (b) 'In reviewing the action of a trial court in directing a verdict, this court will regard as conclusively established every fact favorable to the unsuccessful party which the evidence proves or tends to establish.' " *Bainter v. Appel,* 124 Neb. 40, 245 N. W. 16. The same rule applies to a motion to dismiss for insufficiency of the evidence.

The place of the accident was some three miles west of Nebraska City on a graveled country highway which runs east and west. At the place where the accident occurred,

the highway is 66 feet wide, the improved portion was 28 feet from shoulder to shoulder. Looking west the highway goes over a rather sharp hill and enters a valley. To the south of the shoulder of the highway was a slight depression running parallel with the road. . Along the fence line there was a 50-year old Osage hedgerow. This was about 15 feet from the edge of the shoulder of the road. The hedge had been cut down, leaving large stumps sticking out of the ground. It had a second growth. Some of this growth had been trimmed to make posts; wire was attached thereto; and a live hedge was along the line. There was a power line pole located between the hedge and the graded portion of the road. This was about 315 feet beyond the crest of the hill.

About 4:30 p. m. on March 2, 1943, a car making "an awful roar," traveling at an "awful rate" and raising an unusual and "terrible cloud" of dust, went west past the crest of the hill. The accident followed immediately. The sheriff and a near-by resident inspected the scene within a few minutes after the accident. The tracks of the car were clearly visible. They went west 50 feet beyond the crest of the hill and on the right-hand side of the road. They then turned to the southwest and went 180 feet further on the graveled portion of the highway. They then traveled 20 feet in the depression, then hit and ran alongside of or on the hedge for 65 feet to the power line pole, past it a few feet, then turned abruptly to the left and the car came to a stop, headed almost due east, some 15 or 20 feet south of the power line pole. The marks of the tire treads were clearly visible along the highway, into the depression and up to the hedge. They were somewhat deeper in the lower part of the depression. There were no skid marks. During its progress down the hedgerow, the car broke off three fence posts, hit, sheared off and broke off the tops of some 12 or 15 of the stumps, throwing a large part of one stump about 25 feet, hit the power pole on its south side, knocked down and sheared off the hedge, leaving a pile of debris' beyond the power pole, where it made the abrupt left-hand turn.

The right-hand door of the car was found some ten feet east of the power pole. The deceased, unconscious, covered with hedge brush, his head crushed, was found lying on the ground about ten feet east of the power line pole. He died from his injuries shortly thereafter. Pictures in evidence show two stumps, larger than the power pole in diameter, to the east of the place where deceased's body was found.

The car was damaged front, back, top, bottom, inside and outside. The right-hand door was torn off; the rear trunk door was off; the right and left fenders were caved in; the top was crushed in; the lining was torn on the inside of the car; and contents from the car were in the pile of debris' at the turn beyond the pole. The left front tire was down and almost torn from the wheel; the left rear tire was down and the left rear wheel was locked. The left rear brake rod was bent, which caused the locking of the wheel.

The deceased and the defendant were old acquaintances. Deceased had ridden with defendant before, and defendant was considered "a safe driver." Defendant was seriously injured. Shortly after and on the afternoon of the accident, defendant said: "When he got over the hill the car went out of control." Some weeks later he told a witness that "they were going down the road and he looked out the side and when he turned back he thought he saw something in the road and tried to turn out for it and tried to turn back."

Defendant by his answer admitted that he owned the automobile; that on the day in question he was driving it west of Nebraska City; that an accident occurred; and that deceased was riding as a guest in the automobile with him.

At the close of plaintiff's case in chief, defendant moved for an instructed verdict on the ground that the evidence did not show defendant guilty of gross negligence. The motion was overruled. Defendant then testified in his own behalf that he and deceased left Nebraska City, going west, about 3:45 p. m.; that they stopped at a farm about 1½ miles out, then proceeded west; that his speedometer was

broken; that he was driving from 40 to 45 miles an hour and not over 50 miles an hour; that he was driving on the right-hand side of the road; that he thought he had the car under control at all times; that he was not familiar with this road; that as he came over the top of the hill, it seemed like there was a depression or something in the road; that he turned to avoid it, put on the brakes, and "the car seemed to turn around in the road and we went south off the road"; that he was afraid if he turned "too fast," he would upset; that he was trying to get back on the road and had both hands on the steering wheel at all times; that he came to the hedge fence, hit a stump with an "awful jar", and that both he and deceased were thrown out before they reached the power pole, and both landed at the same place. That is all defendant remembers. He further testified that his car, including the brakes, was in good mechanical condition, except that the wheels "shimmied" at 50 miles an hour, and did not do so just before the accident. His tires were all inflated immediately before the accident, and he does not know when they went down.

After both parties had rested, defendant renewed his motion to dismiss, which the court sustained on the ground that gross negligence of the defendant was not shown.

The evidence here digested is sufficient to sustain a finding that the defendant, driving the car in which deceased as a guest was riding with him, approached and went over the hill on a road with which he was not familiar, at an excessive and dangerous rate of speed, a speed so fast that he lost control of the car upon an effort to make a slight turn in direction; that defendant, so driving, took his eyes and attention off the road, looked to one side and looking back thought he saw a depression in the road; that the car started its course to the left and the defendant did not apply his brakes; that he continued his excessive speed; that he elected not to turn "too fast" and accordingly, he did not correct his direction during 200 feet of travel (180 feet on the traveled road bed); that he hit the hedge and traveled on it a distance of over 65 feet with sufficient speed to break off

stumps and posts and to throw deceased against the door, break off the door and throw deceased out to his death; that the tires were torn and deflated in passing over the stumps and posts; that the brake rod was bent in the same way; that as a result of this deflation and the bending of the brake rod, the car turned to the left and stopped with the rear left wheel locked. We do not find testimony that the car turned over, but it is difficult to understand the heavy dents in the top of the car except on that basis.

Does this evidence show gross negligence?

The guest statute provides: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of said motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle." Comp. St. Supp. 1941, sec. 39-1129. In construing this statute we have said: "Gross negligence means great or excessive negligence; that is, negligence in a very high degree. * * * it indicates the absence of even slight care in the performance of a duty." *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96. More recently we have said: "Gross negligence means just what it indicates, gross or great negligence, that is, negligence in a very high degree." *Johnson v. Batteen, ante,* p. 384, 13 N. W. 2d 625.

We have also, since *Morris v. Erskine, supra,* followed the rule there stated that "What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence. Ordinarily, the question of negligence, whether slight or gross, is one of fact. If the evidence respecting it is in conflict and is such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine."

It is apparent that no one act of the defendant can be separated from the whole of these acts and held to be the

independent cause of this accident. Under these circumstances each act is not to be segregated and weighed separately to determine whether or not it constituted gross negligence. The several acts are to be considered as a whole. While each of several acts, standing alone, may not exceed the bounds of ordinary negligence, yet, taken together, they may establish gross negligence. In such cases, it is for the jury to determine whether a defendant is guilty of gross or ordinary negligence. A verdict should not be directed nor a cause of action dismissed unless a court can definitely determine that the evidence of defendant's negligence, when taken as a whole, fails to reach that degree of negligence that is considered gross. Here the jury were not bound to find that defendant's acts were negligence in a very high degree, but a jury question was in our opinion presented as to whether or not, under the circumstances here, the things which defendant did and failed to do amounted to negligence in a very high degree, i. e., gross negligence. See *Thompson v. Edler,* 138 Neb. 179, 292 N. W. 236. The trial court erred in dismissing plaintiff's cause.

Two other matters require attention. After the accident, defendant, seriously injured, was taken or went to a nearby house. There the sheriff talked with him as he lay on the floor. The sheriff asked him "how he was getting along." Defendant answered: "Carl, I'll never drink anymore." The trial court sustained an objection to the statement and it was stricken. There was no evidence of drinking on the part of the defendant. This statement stands isolated and alone. The question does not relate to the way in which the accident happened. Standing alone, as it does, it was not an admission that defendant had been drinking intoxicating liquors, nor that he was under the influence of such liquors at the time of the accident. The statement is not admissible as a part of the *res gestæ*. The rule is: "A statement to be admissible as a part of the *res gestæ* must have been spontaneous and impulsive, and made at a time and under such circumstances as to induce the belief that it

was not the result of reflection and premeditation." *Tongue v. Perrigo*, 130 Neb. 564, 265 N. W. 737. Here the statement was made a considerable time after the accident; it was not spontaneous; it shows by its very words that it was the result of reflection and premeditation. The trial court did not err in ordering the statement stricken.

Defendant pleaded that deceased had ridden with him on many previous occasions, was aware of defendant's proficiency in driving, and his usual and customary habits of driving; that deceased accordingly assumed the risk incident to being defendant's guest passenger and made no protest as to the manner of driving; and that, therefore, the judgment should be sustained. Defendant's testimony is that deceased had ridden with him before; that he, defendant, had never had an accident before; that deceased made no protest and there was no need for protest until the car started to leave the road; that thereafter defendant would not have expected deceased to protest. Defendant cites *Kelly v. Gagnon*, 121 Neb. 113, 236 N. W. 160, and *Landrum v. Roddy*, 143 Neb. 934, 12 N. W. 2d 82. As this court said in *Sterns v. Hellerich*, 130 Neb. 251, 264 N. W. 677, there is no evidence that deceased had any knowledge that defendant "was a reckless driver or would be guilty of gross negligence." Deceased did not expose himself to a known danger. Defendant's testimony negatives any such conclusion. The doctrine of assumption of risk has no application here.

The judgment of the trial court is reversed and the cause remanded for further proceedings.

REVERSED.