REUBEN MONTGOMERY, APPELLANT, v. LEROY ROSS,
APPELLEE.

58 N. W. 2d 340

Filed May 8, 1953.   No. 33321.

*Ginsburg & Ginsburg,* for appellant.

*Davis, Healey, Davies & Wilson* and *Robert A. Barlow, Jr.,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Reuben Montgomery brought this action in the dis-

trict court for Lancaster County against Leroy Ross. It is a tort action based on alleged negligent conduct of defendant in driving his car while plaintiff was a guest therein, which conduct, it is alleged, caused the car to be in an accident and resulted in plaintiff being seriously injured. After both parties had rested defendant moved the court to dismiss plaintiff's cause of action. This motion was based on several grounds, including the following: "That the evidence is insufficient to establish gross negligence upon the part of the defendant." The trial court sustained this motion and dismissed the action. Plaintiff filed a motion for new trial and, from the overruling thereof, perfected this appeal.

Since appellant was riding as a guest the question raised by this appeal is, is the evidence adduced sufficient to support a finding that appellee was guilty of gross negligence? § 39-740, R. R. S. 1943. In determining whether or not appellant made a prima facie case the following basic principles are applicable:

"A motion for directed verdict or its equivalent must, for purpose of decision thereon, be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Davis v. Spindler, *ante* p. 276, 56 N. W. 2d 107.

"* * * a verdict should only be directed where the court can clearly say that it fails to approach the level of negligence in a very high degree under the circumstances." Thompson v. Edler, 138 Neb. 179, 292 N. W. 236.

"A verdict should not be directed nor a cause of action dismissed unless a court can definitely determine that the evidence of defendant's negligence, when taken as a whole, fails to reach that degree of negligence that is considered gross." Komma v. Kreifels, 144 Neb. 745, 14 N. W. 2d 591.

Appellant was a truck driver for the Burlington Truck Lines. Appellee worked for the same company. They had been working together for about 3 years and while well-acquainted were not particularly close friends. Neither was working on Saturday, February 17, 1951, the day of the accident. By chance they met that morning in a tavern in Lincoln. There they visited for about a half hour during which time they drank a beer or two. They then went to Union Hall located in the 200 block on South Ninth Street in the city of Lincoln. Both men belonged to the same union and they went to the hall to obtain some information about insurance their employer was supposed to furnish. After obtaining the information they left Union Hall about 11:30 a. m. They went to the Ellsworth Cafe which is located immediately underneath the hall. They stayed in the cafe for about an hour and while there ate a couple of sandwiches and maybe drank a couple of beers. After this lunch they decided to go to Bennet, Nebraska, to play cards, appellant having previously played there. Bennet is located southeast of Lincoln in Lancaster County. They went to Bennet in appellee's car, a 1947 Chevrolet tudor sedan, arriving at Bennet about 1:30 p. m. They went to the Bennet cafe and tavern where they stayed and played cards. While there appellee drank a glass of beer. About 3:30 p. m. they decided to start for Lincoln with the intention of stopping at Roca on the way. They arrived at Roca shortly after 4 p. m. and stopped there, going to a tavern. Here they again played cards. They stayed in this tavern for over an hour and while there playing cards appellee drank a glass of beer. They left Roca for Lincoln sometime after 5:30 p. m. It was still daylight. Appellee drove his car and appellant sat on the right-hand side of the front seat. They proceeded west out of Roca on the highway. Shortly after leaving Roca appellant made the remark, "I believe I'll stretch out until we get into Lincoln." Apparently he fell asleep very quickly after making this remark for he testified

he remembers nothing of what happened thereafter.

The first half mile of the highway west from Roca was paved. Thereafter it was graded and graveled. The accident happened about eight-tenths of a mile west of Roca. At that point the graveled highway is level and straight and at the time was dry, smooth, and in good traveling condition. Along the north edge of the traveled portion was a windrow of gravel about 2 feet wide and approximately 1 foot high.

From the evidence adduced a jury could find that as appellee drove his car west on the traveled portion of the graveled highway he permitted it, at a time when there was no oncoming traffic, to drift from where it was traveling, which was about 4 feet south of the windrow, toward the southwest for a distance of some 75 to 100 feet until it left the traveled portion of the highway and passed onto and across the shoulder thereof and into the ditch located along the south side; that the ditch at this point was about 2 feet deep, but of sufficient width to permit a car to travel therein; that the slope of the shoulder was sufficiently gentle to permit the car to travel from the road and into the ditch without tipping over; that the bottom of the ditch was muddy and soft with some undergrowth; that appellee, after his car had gotten into the ditch, drove it therein toward the west unaware of an embankment at the south end of a cement culvert located in this highway some 100 feet west of where his car had entered the ditch; that he continued to drive his car in the ditch with sufficient speed that as he reached a point near the culvert where the road ditch had reached a depth of about 4 feet he tore out a piece of the fence located along the south edge of the ditch; that when he got to the culvert the front end of the car hit the west embankment of a ditch located there in connection with the drain under the culvert, the force of the blow pushing back the grill and front fenders of his car; that before the forward movement of the car had stopped the front wheels thereof had crossed this

embankment, which was between 1 and 1½ feet high; and that the car stopped, after doing so, with the rear wheels in this ditch. The car, when it came to a stop, was still facing west.

There is no direct evidence as to what speed the car was traveling while on the road or in the ditch. Appellant received serious injuries.

There is no contention made that appellee was driving while under the influence of intoxicating liquor within the meaning of section 39-740, R. R. S. 1943. In fact, appellant testified appellee was normal when they left the tavern at Roca and was driving normal just before he, appellant, went to sleep and did not, at that time, appear to be under the influence of intoxicating liquor. The evidence as to his drinking beer is just a circumstance which the jury could consider when passing upon the question of whether or not the appellee was guilty of gross negligence, provided the evidence adduced established facts sufficient to present that as an issue to a jury. See Howard v. Gerjevic, 128 Neb. 795, 260 N. W. 273.

"Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It indicates the absence of even slight care in the performance of a duty." Komma v. Kreifels, *supra.*

"What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence." Komma v. Kreifels, *supra.*

Both sides cite many cases in support of their contentions; that is, appellant that he has made a prima facie case and appellee that appellant has not. We will not discuss these cases individually for, as stated in Thompson v. Edler, *supra:* "It must be borne in mind, always, that no decision on gross negligence can constitute an absolute precedent in any other case. Each case necessarily differs somewhat in its particular facts and cir-

cumstances, and in the composite which results from them. A dissection of the individual facts may, therefore, be misleading, because, in the attempted segregation, part of their real significance may become lost. While it may be regrettable that no perfect yardstick for measuring gross negligence has ever been devised, the numerous decisions, which the guest statutes have produced, seem rather clearly to demonstrate that this is as close as it is possible to come to a judicial solution. If the tapeline of past decisions seems at times to be somewhat inaccurately applied, and the processes of logic to be a bit variable in their result, this may be largely because the observer is looking at the facts in isolation and not in context."

However, since appellant seems to rely more on Thompson v. Edler, *supra,* than any other case, we will briefly refer thereto. While there is some similarity in the two cases up to a certain point, thereafter the picture changes rather abruptly. In Thompson v. Edler, *supra,* the driver of the car, who was then driving about 40 miles an hour, saw the guard rail of a bridge some 10 or 20 feet ahead of his car. Upon seeing the guard rail he decided to crash through it, in apparent complete disregard of consequences, and for that purpose pressed the gas accelerator down to the floor board and plowed into the guard rail with all the speed his car had. As a result he completely sheared off the guard rail, which was 62 feet long and 3 feet high, and made of lumber 2 by 6 inches and 2 by 8 inches. The impact caused some of this lumber to be thrown as far as 60 to 70 feet beyond the bridge and caused one of the pieces to be driven through the floorboard of his car. The car ultimately landed in the creek near the south end of the bridge, it having approached the bridge from the north. It had turned upside down.

There is no question but what a jury could find appellee was guilty of several different acts of negligence while operating his car.

"We have held that a series of acts of ordinary negligence may, under certain circumstances, operate to produce gross negligence but not necessarily so." Pavlicek v. Cacak, 155 Neb. 454, 52 N. W. 2d 310. See, also, Komma v. Kreifels, *supra;* Thompson v. Edler, *supra.*

However, in view of the standards which this court has applied in guest cases we do not think appellee's negligence here rises to the degree of gross negligence within the meaning of the statute. In view of the fact that we have found appellant did not make a prima facie case of gross negligence, we affirm the judgment of the trial court.

AFFIRMED.