IN RE ESTATE OF WILLIAM H. SMOKE, DECEASED. ANNA
PAXTON, APPELLANT,. v. GREYDON L. NICHOLS,
ADMINISTRATOR OF THE ESTATE OF WILLIAM
H. SMOKE, DECEASED, APPELLEE.

59 N. W. 2d 184

Filed June 12, 1953. No. 33293.

R. R. *Wellington* and *Charles A. Fisher,* for appellant.

*Edwin D. Crites,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Anna Paxton, a sister-in-law of the wife of William H. Smoke, deceased, filed a claim against his estate in the county court to recover damages for personal injuries allegedly sustained while riding in a 1935 LaSalle sedan automobile owned and operated in an alleged grossly negligent manner by William H. Smoke during his lifetime. The claim was disallowed by the county court, and plaintiff appealed to the district court. There the issues were presented to a jury and at conclusion of plaintiff's evidence, defendant moved for directed verdict upon the ground that plaintiff's evidence established that she was a guest in the automobile and as a matter of law her evidence was insufficient to establish gross negligence by the driver. Such motion was overruled, whereupon defendant rested and renewed his motion for directed verdict, which was overruled. The issues were then submitted to the jury, which returned a verdict for plaintiff, awarding her $2,417. Thereafter, defendant filed motion for judgment notwithstanding the verdict or in the alternative for new trial. The trial court sustained defendant's motion for

judgment notwithstanding the verdict, and dismissed plaintiff's action. Therefrom she appealed to this court, assigning that the trial court erred in concluding as a matter of law that plaintiff was a guest, and in sustaining defendant's motion for judgment notwithstanding the verdict. We conclude that the assignments should not be sustained.

It is now elementary that a motion for directed verdict or its equivalent, or for judgment notwithstanding the verdict, must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and have the benefit of every inference that can reasonably be deduced from the evidence. Long v. Carpenter, 154 Neb. 862, 50 N. W. 2d 67.

Plaintiff did allege in her petition that she was not a guest, but a careful examination of the undisputed evidence adduced by her with relation thereto discloses that reasonable men could not arrive at any other conclusion except that she was a guest. Therefore, the trial court properly so assumed as a matter of law.

In Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N. W. 2d 451, relied upon by plaintiff, we held: "The question of whether a person riding in a motor vehicle is a guest, or engaged in a joint enterprise, or other relationship, is generally one for determination in the individual case. It must be ascertained from facts establishing the identity of the persons advantaged by the carriage, the relationship between the parties, and the purposes to which the transportation is incident.

"If the evidence is undisputed, or such that minds of men could not reasonably arrive at any other conclusion, the question is one for decision by the court as a matter of law; otherwise, it is a question for the jury to decide as other issuable facts in the case.

"A person riding in a motor vehicle is a guest if his

carriage confers only a benefit upon himself and no benefit upon the owner or operator except such as is incidental to hospitality, social relations, companionship, or the like, as a mere gratuity." Such case is entirely distinguishable from that at bar upon the facts and conclusions required thereby, but such rules are conversely applicable and controlling here.

In the case at bar plaintiff was simply a member of the family making a hospitable family visit. The day before the accident, which occurred on October 1, 1948, she met William H. Smoke up town and rode in the same LaSalle automobile out into the country about a mile and a quarter to his home. She did not know the car's model, but did know who formerly owned it. She concededly paid the driver nothing for so taking her out in the car or taking her back to Chadron the next day. When they arrived, Mrs. Smoke was there and they talked, among other things, about the Smokes renting and moving into plaintiff's house for the winter. The next day plaintiff assisted some with the housework and helped Mrs. Smoke pack up some fruit jars and other things to take to plaintiff's home in Chadron. They had dinner and supper together, and Mrs. Smoke gave plaintiff a basket of jars of fruit. A Mr. Hawkins was also there for supper, and about 6 o'clock they loaded the basket of jars of fruit and other things in the LaSalle automobile and all of them started back toward Chadron with plaintiff's driver. Mrs. Smoke and plaintiff rode in the back seat and William H. Smoke and Mr. Hawkins rode in the front seat. The accident occurred just west of Chadron outside the city limits near the east fork of the "Y" where highways 19 and 20 join each other. William H. Smoke lost his life as a result of the accident.

Since plaintiff was riding as a guest, she could not recover unless the evidence adduced by her was sufficient to establish by a preponderance of the evidence that her driver was grossly negligent in some manner as alleged and that such negligence proximately caused

the accident and her injuries. See § 39-740, R. R. S. 1943.

In that connection, it is said in the opinion in Montgomery v. Ross, 156 Neb. 875, 58 N. W. 2d 340: " 'Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It indicates the absence of even slight care in the performance of a duty.' * * *

" 'What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence.' "

In the syllabus in Montgomery v. Ross, *supra,* it is held: "A verdict should not be directed nor a cause of action dismissed unless a court can definitely determine that the evidence of defendant's negligence, when taken as a whole, fails to reach that degree of negligence that is considered gross." See, also, Komma v. Kreifels, 144 Neb. 745, 14 N. W. 2d 591; Thompson v. Edler, 138 Neb. 179, 292 N. W. 236. Further, as held in Pavlicek v. Cacak, 155 Neb. 454, 52 N. W. 2d 310, and reaffirmed in Montgomery v. Ross, *supra:* "* * * a series of acts of ordinary negligence may, under certain circumstances, operate to produce gross negligence but not necessarily so."

In Gosnell v. Montgomery, 133 Neb. 871, 277 N. W. 429, this court held: "When evidence is resolved most favorably toward the existence of gross negligence, and thus a fixed state of facts had, the question of whether or not such facts will support a finding of the existence of gross negligence is a question of law." In that connection, plaintiff alleged in substance that her driver was grossly negligent, proximately causing the accident, in that: (1) He failed to keep a proper lookout; (2) failed to drive at a speed which was reasonable and proper under the circumstances, but drove at a high and excessive speed; (3) failed to drive on the right side of the highway and give a vehicle approaching

from the opposite direction one-half of the main traveled portion thereof; and (4) "That said Smoke drove said motor vehicle, when the steering gear and steering appratus (apparatus) therein and thereon was in an unsafe, defective and dangerous condition, he being well aware of the condition of the same."

Defendant's answer denied generally, but among other things admitted that there was an accident at the time and place alleged and that plaintiff was riding in the driver's 1935 LaSalle sedan, but alleged that she was a guest therein, had ridden in said automobile on previous occasions when driven by such driver, and upon the occasion in question made no protest whatever to the manner of driving the same. In that regard, there was no evidence that plaintiff ever made any protest with regard to the manner of driving the car.

The undisputed evidence was in substance as follows: Highway 19 extends from the south in a wide curve, having a 750 foot radius toward the northeast, where it forks into or joins highway 20 extending east and west at a point directly south of the Chadron refinery, located just west and outside the city limits of Chadron. There is a cafe just east of the refinery near where the two highways eventually merge into each other, at the east fork of the highways. The accident occurred just east of that point.

It was about 6:30 p. m., and bad dusk or dark enough to require lights, which were on. The driver of an Oldsmobile proceeding west on highway 20 and slowly approaching, testified that he first saw the car in which plaintiff was riding as it came from the south about one-half way around the curve, but that he thereafter forgot about it because there was a car driving just close ahead of him, and as it suddenly turned off into the cafe he next saw plaintiff's driver coming along straight east, a little off center at an angle, directly in front of him on the wrong side of the highway, whereupon they collided practically head on. He estimated Smoke's

speed to be between 30 and 35 miles an hour when he first saw him.

A witness who was standing inside the door of the Tri-State building located across the street south of the cafe observed the Smoke car as it came from the south around the curve on its right side of the highway at a speed which he estimated to be from 30 to 40 miles an hour. He testified that there was a hogback or ridge on the pavement at the point where highway 19 joins highway 20, and just as plaintiff's driver got over that a short distance from the accident, he sort of dived from his right side to the north on the wrong side of the highway, and hit the Oldsmobile, which had almost stopped. There were no "Slow" or "Stop" signs on either highway at the point involved, and the amount of other traffic, if any, thereon at the time of accident cannot be ascertained from the evidence.

The man riding in the front seat with plaintiff's driver had ridden out to the Smoke home that morning in the same car. He testified that Smoke told him, sometime before the accident, that the car was kind of old and out of shape and he was trying to get some repairs for it but hadn't been able to obtain them yet. It was something about the steering. Such witness never drove the car, but testified that as near as he could tell, the car "would steer but it wouldn't take a hold till after awhile. You would pull on it and it would take a hold after a bit; and that was what throwed us out of line." They came over the highway past the refinery, and got along pretty good, always on their own side of the highway, until just a little bit before the accident the car kind of wobbled or wandered over toward the wrong side and the collision occurred. He first saw the other car right in front of them just as they hit. He testified that while they came around the curve, they could not have been going over 30 miles an hour because it was such an old car. He was positive that it could not be driven over 30 miles an hour at any time, and said that Mr.

Smoke was "a painfully slow and cautious driver," he "wasn't a fast driver because he couldn't have been."

In the light of such evidence, the question presented is whether or not the trial court erred in concluding as a matter of law that plaintiff's driver was not guilty of gross negligence. We conclude that the court did not err in so deciding.

In that connection, the speed at which the car was driven could not reasonably be found to be excessive or unreasonable under the circumstances. It could reasonably be concluded that plaintiff's driver was negligent in failing to keep a proper lookout, but in that regard we must consider the fact that the car just ahead of the Oldsmobile, coming from the east, turned out toward the cafe, just prior to collision with the Oldsmobile driving right behind it. We recently held in Kuska v. Nichols Construction Co., 154 Neb. 580, 48 N. W. 2d 682: "A traveler may ordinarily occupy and use any part of a public highway he desires when not needed by another whose rights thereto are superior to his own." It is true here that it could be reasonably concluded that plaintiff's driver was negligent when he drove on the wrong side of the highway and collided with another whose rights thereto were superior to his own. However, it could not be reasonably concluded that the negligence above recited was gross in character. The question then is whether or not it could be reasonably concluded that such negligence in the light of and in connection with the evidence relating to the driving of the vehicle with an alleged defective steering apparatus could be gross negligence. We conclude that it could not.

It will be noted plaintiff did not allege in her petition that the purported defect in the steering apparatus was not reasonably obvious to or unknown by her, or that her host failed to warn her thereof; and there was no evidence adduced from which it could be reasonably concluded that such defect was not reasonably obvious to

or was unknown to her or that her driver failed to warn her thereof. There was no evidence of the exact nature of the alleged defect or that the car was not in a reasonably safe condition, but was unsafe to drive, or that the driver realized or should have realized that there was a hidden or latent danger lurking in the automobile which plaintiff might avoid if she knew of it. There was no evidence that the driver had ever had any previous difficulty or accident with the car or that he realized or should have realized that the driving of it as he did involved any unreasonable risk to his guests. His lack of such realization is evidenced by the fact that he not only entrusted his own safety but also that of his wife, a sister-in-law, and another therein, and lost his own life in doing so. In that connection, as stated in O'Shea v. Lavoy, 175 Wis. 456, 185 N. W. 525, 20 A. L. R. 1008, cited with approval by this court in In re Estate of O'Byrne, 133 Neb. 750, 277 N. W. 74, hereinafter discussed: "There can be no stronger evidence of the belief of the ordinary well-meaning man in the sufficiency of the car to safely make the trip."

Except for the conclusion of plaintiff's witness who rode in the front seat with the driver, there was no evidence that a defect in the steering apparatus caused the car to wander or wobble over on the wrong side of the highway. It could as well have been caused by the hogback or ridge on the pavement, as indicated by another of plaintiff's witnesses, or by the driver's inadvertence or want of skill in driving.

In 4 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), § 2333, p. 448, it is said: "* * * the general rule respecting injuries attributable to defects in the condition of the automobile is that a gratuitous invitee riding therein as the guest of the owner, or driver, accepts the machine of his host as he finds it, subject to the limitation that the host must not in effect set a trap by knowingly or culpably exposing invitees to the risk created by a known or obvious defect

in the automobile or otherwise be guilty of active. negligence in this connection contributing to the injury of guests. A trap, within the meaning of such rule, is a hidden danger lurking upon the premises, or in the automobile which is known to the host or should be known to him in the discharge of the duty for a passenger's safety which the law imposes on him and which the guest may avoid if he knows of it. * * * Of course if the defect does not cause the accident, there is no liability.

"The fact that the mechanical defect productive of the injury is one discoverable upon an inspection of the car does not show negligence on the part of the host nor authorize a recovery by the guest, and gross negligence cannot be predicated upon a failure to inspect the vehicle thoroughly before inviting another to ride; the motorist's duty in this connection, if any, being limited to the exercise of slight care. If he thinks the automobile is in good or reasonably safe condition, although it is not, that ordinarily relieves him from any liability for defects therein.

"In jurisdictions where automobile guest statutes control, negligence, in the sense of a failure of ordinary care, in respect to the maintenance of the mechanical equipment of an automobile, affords no foundation for recovery by a guest for injuries sustained by reason of the vehicle's state of disrepair." See, also, 5 Am. Jur., Automobiles, § 235, p. 630.

In re Estate of O'Byrne, *supra,* is of interest here. Therein this court reversed and dismissed an action where liability to a guest was predicated upon the driving of a car with an alleged defective steering apparatus. In that opinion it was said: "The cases are not entirely in accord regarding the liability of the owner or operator of an automobile for injuries to a guest caused by its defective condition. But it is generally held in the absence of guest statutes that one is liable to his guest for injuries caused by a defective latent condition of

which he is aware. The rule is stated in 4 Blashfield, Cyclopedia of Automobile Law and Practice, 150, as follows: 'He is answerable for injuries to guests caused by a defective or dangerous condition of the automobile of which he is or should be aware, which defect is not reasonably obvious to the guest and is unknown to him, if he should realize the unreasonable risk to the guest created by such defect.' * * *

"There is a question whether, under our 'guest statute,' the owner of an automobile is always grossly negligent if he knows of a latent defect, undiscoverable to his guest, and fails to warn him of the danger. He surely must realize the danger to which he subjects his guest. In Gifford v. Dice, 269 Mich. 293, 257 N. W. 830, it was held that a motorist under the circumstances of that case was only ordinarily negligent, and was not liable under their guest statute."

Waters v. Markham, 204 Wis. 332, 235 N. W. 797, cited with approval by this court in In re Estate of O'Byrne, *supra,* involved liability to a guest for ordinary as distinguished from gross negligence. Therein it was said: "It is our conclusion that an automobile host may be held liable for injuries to his guest, caused by a defective condition of his automobile, if he knew of such defect and realized, or should have realized, that it involved an unreasonable risk to his guest, and the defect was so concealed or hidden as not to be reasonably obvious or patent to the guest, and the defect and the risk involved were in fact unknown to the guest, and the host failed to warn the guest as to the defective condition and the risk involved therein." Olson v. Buskey, 220 Minn. 155, 19 N. W. 2d 57, arrives at like conclusion, citing numerous authorities, including Waters v. Markham, *supra.* See, also, Heesacker v. Bosted, 131 Neb. 42, 267 N. W. 177.

In the light of the rules heretofore stated and their application to such facts as were established by evidence adduced in plaintiff's behalf, we conclude that the

trial court did not err in concluding as a matter of law that plaintiff's driver was not guilty of gross negligence. In Gummere v. Mudd, 139 Neb. 370, 297 N. W. 622, this court said: "Authorities relied upon by plaintiff for reversal all disclose the ever present imminence of danger visible to, known by, or made known to the driver, together with a persistence in negligence apparently heedless of the consequences thereof; evidence of negligence far in excess of any appearing in the case at bar and from which different minds might reasonably draw different conclusions as to the factual question of gross negligence." Such statement is controlling here.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.