DOROTHY CRONIN, APPELLANT, v. DALE SWETT, APPELLEE.

61 N. W. 2d 219

Filed November 27, 1953.   No. 33378.

*Fitzgerald, Hamer, Brown & Leahy,* for appellant.

*Wear & Boland,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Dorothy Cronin brought this action in the district court for Douglas County against Dale Swett. It is a tort action based on alleged negligent conduct of defendant in driving his car while plaintiff was riding therein as a guest. This conduct, it is alleged, caused the car to leave the paved surface of the highway and crash into a ditch, resulting in plaintiff being seriously injured. It also included a cause of action for damages which her husband, Murt F. Cronin, sustained as a result thereof for medical, hospital, and surgical expenses necessarily incurred for the care of his wife because of the injuries she suffered and for loss of her services, which causes of action he had assigned to her. After both parties had introduced their evidence and rested the trial court sustained defendant's motion for a directed verdict. This motion was based on several grounds, including the contention that the evidence failed to establish gross negligence on the part of the defendant which was the proximate cause of the accident. The trial court thereupon dismissed the action. Plaintiff filed a motion for a new trial and, from the overruling thereof, perfected this appeal.

The accident herein involved happened sometime between 10 and 11 p. m. on Saturday, January 13, 1951. It occurred on the north curve of a Y on Federal Highway No. 275 about 2 miles south of Waterloo, Nebraska. This Y is located about 18 miles west of Omaha where Federal Highway No. 275, coming from Fremont, Nebraska, joins with Federal Highway No. 30 Alternate,

coming from Wahoo, Nebraska, to become what we will herein refer to as the Dodge Street road. The Dodge Street road is a four-lane highway with a 42-foot paved surface as it approaches this Y. Appellee's car, which he was driving from Omaha to Fremont, ran off the west edge of the paved surface of Federal Highway No. 275 just after it had left the Dodge Street road. Upon leaving the paved surface it traveled across the shoulder of the road and down a 3-foot bank, turned over, and stopped upside down. When it stopped it was about 100 feet from where it left the paved surface of the highway and about 50 feet west thereof. In the car at the time were appellee and his wife, Margaret, and appellant and her husband, Murt. The latter couple was riding in the back seat. Appellant, as a result of what happened, was thrown out of the car and seriously injured.

Appellant, as a basis for her right to recover, alleged: "That at the time of and immediately prior to said accident, the defendant was guilty of the following grossly negligent acts and omissions and each of them: 1 - For a period of more than five days prior to said accident, defendant knew that the steering mechanism of said automobile was defective, inadequate, inefficient and was not operating properly, but he failed and neglected to have same corrected or repaired. 2 - That although the defendant knew prior to said accident that said steering mechanism was defective, inadequate and inefficient and was not operating properly, he wholly failed to warn the plaintiff of that fact and invited the plaintiff to ride in said automobile. 3 - That although the defendant knew prior to said accident that the said steering mechanism was defective and was not operating properly, he drove said automobile around the said curve at a speed of 45 to 50 miles per hour."

As stated in Paxton v. Nichols, *ante* p. 152, 59 N. W. 2d 184: "Since plaintiff was riding as a guest, she could not recover unless the evidence adduced by her was sufficient to establish by a preponderance of the evi-

dence that her driver was grossly negligent in some manner as alleged and that such negligence proximately caused the accident and her injuries."

Since appellant was riding as a guest the first question raised by this appeal is, is the evidence adduced in support of these allegations sufficient to support a finding that appellee was guilty of gross negligence? In determining whether or not appellant made a prima facie case in this regard the following basic principles are applicable:

"A motion for directed verdict or its equivalent must, for purpose of decision thereon, be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Montgomery v. Ross, 156 Neb. 875, 58 N. W. 2d 340. See, also, Bishop v. Schofield, 156 Neb. 830, 58 N. W. 2d 207.

"A verdict should not be directed nor a cause of action dismissed unless a court can definitely determine that the evidence of defendant's negligence, when taken as a whole, fails to reach that degree of negligence that is considered gross." Montgomery v. Ross, *supra.*

"If the evidence is undisputed, or such that minds of men could not reasonably arrive at any other conclusion, the question is one for decision by the court as a matter of law; otherwise, it is a question for the jury to decide as other issuable facts in the case." Bishop v. Schofield, *supra.* See, also, Paxton v. Nichols, *supra.*

"Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It indicates the absence of even slight care in the performance of a duty." Montgomery v. Ross, *supra.* See, also, Bishop v. Schofield, *supra;* Cunning v. Knott, *ante* p. 170, 59 N. W. 2d 180; Paxton v. Nichols, *supra.*

In regard to defective conditions of automobiles being

grounds for recovering in guest cases, we said in Paxton v. Nichols, *supra*: "An automobile host may be liable for injuries to a guest proximately caused by a defective condition of his automobile, if he knew of such defect and realized or should have realized that it involved an unreasonable risk to his guest; if the defect was so concealed or hidden as not to be reasonably obvious or patent to his guest; if the defect and the risk involved were in fact unknown to the guest; and if the host failed to warn the guest as to the defective condition and the risk involved therein."

This court, in Paxton v. Nichols, *supra*, In re Estate of O'Byrne, 133 Neb. 750, 277 N. W. 74, and Heesacker v. Bosted, 131 Neb. 42, 267 N. W. 177, has held that:

Generally guests who enter an automobile of another must take such vehicle as they find it and as it pleases the owner, in the exercise of his right of dominion over his property, to maintain it.

However, the owner of an automobile may be subject to liability for bodily harm proximately caused to guests by a defective or dangerous condition therein not known to them when, but only when, the owner knew of the defective or dangerous condition and realized, or should have realized, that it involved an unreasonable risk to them and had reason to believe that they would not discover it or realize the unreasonable risk created thereby and invited, or permitted them to enter or remain therein, without exercising reasonable care to warn them thereof and the risk involved.

"What amounts to gross negligence in any given case must depend upon the facts and circumstances of each case." Montgomery v. Ross, *supra*. See, also, Bishop v. Schofield, *supra*.

Appellee, who was 30 years of age at the time of trial, is a farmer. He has always lived with his parents on their farm in Greeley County, Nebraska, located about 6 miles southwest of Spalding. This is about 160 to 170 miles from Omaha. In August of 1950 he purchased a

new four-door Dodge sedan. The car was used in connection with his farming operations and, at the time of the accident, had been driven about 5,000 miles.

Appellee had known Margaret Cronin, now his wife, and Murt F. Cronin, appellant's husband and Margaret's brother, for many years as they formerly lived in the vicinity of Spalding. Appellee and Margaret became engaged and planned to be married in Omaha at 11 a. m. on January 13, 1951. Murt F. Cronin was at that time engaged to appellant. Plans were made to have a double wedding ceremony.

Appellee testified that about 2 or 3 weeks before the accident there was something about his car that attracted his attention; that he noticed it did not drive good; that it acted as if the wheels were out of line, or something like that; that it pulled to one side of the road more or less; that it pulled back and forth; that it pulled to one side and the other; that he was not able to steer it in a straight course; that this first happened while he was traveling on a dirt road; that it was more pronounced on dirt and gravel roads than on pavement; that the speed at which it was driven did not seem to make any difference; that the trouble continued whenever he drove it; and that he continued to drive the car without doing anything about it.

He further testified that on Monday, January 8, 1951, he drove to Grand Island, a distance of about 58 miles, to buy a suit for the wedding; that while there he took the car to the Chevrolet garage to have it washed; that he told them at the garage to wash the car and to check the steering business or line up the wheels, whatever it was, as the car was not driving right; that the garage did not say whether they would be able to do it; that he left it there 2 or 3 hours; that when he got back they had washed the car but told him they had not had time to fix it; that he then drove the car home; that he continued to have the same trouble; and that he continued to use the car.

On Wednesday, January 10, 1951, appellee drove the car to Omaha. There it was used from Wednesday to Saturday, inclusive, in connection with preparations for the wedding. It is significant that during this time all those who testified they had ridden in the car during this period of time, which included appellant, her husband, his sister Betty Cronin, and appellee's wife, testified they noticed nothing wrong with the operation of the car, and those who drove it, which included appellant's husband and his sister Betty, testified they noticed nothing wrong with the steering apparatus or mechanism while doing so.

The parties were married at 11 a. m. on January 13, 1951. That evening, between 9:30 and 10 p. m., they left Omaha for what appellee planned as a trip to Fremont for the purpose of staying overnight. They proceeded west on the Dodge Street road to the Y. Appellee drove his car onto the north curve of the Y, or toward Fremont. After his car had entered the curve, the paved portion of which is about 20 feet wide, he testified he got about half way around the Y when his car shot off the road toward the northwest; and that it left the paved portion of the highway, going over a 3-foot grade, and then overturned, coming to rest on its top. The record shows appellee was, at the time, driving not over 50 miles an hour; that the paved surface was clear and dry, although there was some ice and snow on the shoulder; that the weather was clear although the night was dark; and that the curve, which was long and easy, was on the level.

After the accident appellee called the Nebraska Safety Patrol and he and Sergeant Vernon W. Byler of the patrol, now a Lieutenant, investigated the accident. Byler testified appellee told him that he had been having a little trouble with his car; that he had taken it to a garage in Grand Island for them to check; and that they thought it needed repair but that they could not do it that particular day. Appellee admits he told Byler he

had taken the car to Grand Island to be fixed and that they had not had time to do it. There is no evidence in the record that anyone at the garage in Grand Island told appellee that they thought his car needed repairs.

Murt F. Cronin, appellant's husband, testified that about 8 a. m. on the Sunday following the accident appellee told him he was sorry that the steering arm on the car broke and that he wished he had stayed in Grand Island and had it fixed. Appellee admits he told him he was sorry and wished he had taken the car and had it fixed. There is no evidence in the record showing the steering arm of the car broke.

Appellant testified that the day she came home from the hospital that appellee talked to her in her apartment; that he told her his car had been acting up; that he had taken it to Grand Island to get it fixed; but that he just did not have time to wait for it to be done. Appellant admits he had the conversation and that he told her about the car and that he was sorry the accident happened.

There is no evidence of the exact nature of the alleged defect or that the car was not in a reasonably safe condition or that the driver realized or should have realized that the driving of it, as he did, involved any unreasonable risk to his guests. His lack of such realization is fully evidenced by the fact that he not only entrusted his own safety but also that of his bride, his brother-in-law, and sister-in-law therein. We do not think, under the circumstances here shown by the record, that appellee was negligent in driving his car.

While not material, in view of what we have already said, there is another serious deficiency in appellant's proof. The record does not show what caused the car to leave the highway. That appellant must do so is elementary for a guest must not only prove that a dangerous defect existed but that such defect caused the accident for if it did not cause the accident there can be no liability. See, In re Estate of O'Byrne, *supra;* Paxton v.

Nichols, *supra*. Appellee testified the car did not skid but just shot out of the road toward the northwest and that he was not able to control the steering thereof. Byler testified he could not determine what had caused the car to leave the highway but that appellee told him he lost control of the car, that he was unable to turn it right, and that it just kept on going straight ahead. All of the witnesses who were riding in the car at the time testified there was nothing about appellee's manner of driving, up to the time the car left the highway, or the operation thereof that caused them any concern. However, appellee further testified he did not know if he could have turned it to the right for although he supposed he made an effort to do so he could not say that he did. There is no evidence that a check was made of the steering mechanism after the accident. Under this factual situation to say a previously defective steering mechanism caused the accident would be, at best, only a conjecture, surmise, or possibility. A verdict based on such evidence could not be sustained.

We find the decision of the trial court sustaining appellee's motion for a directed verdict to have been proper. Consequently its order dismissing the action was correct. Its decision is therefore affirmed.

AFFIRMED.

CARTER, J., participating on briefs.